NETZEL, Respondent, v. STATE SAND & GRAVEL COMPANY, Appellant.*

*No. 33.   Argued March 29, 1971.—Decided May 4, 1971.*
(Also reported in 186 N. W. 2d 258.)

---

* Motion for rehearing granted on June 29, 1971, and mandate of the opinion is modified to grant a new trial limited to the questions of negligence and apportionment; no costs to be allowed on this rehearing.

1

4

For the appellant there was a brief by *Gibbs, Roper & Fifield,* attorneys, and *Samuel Goldenberg* of counsel, and oral argument by *Mr. Goldenberg* and *Mr. John R. Hoaglund,* all of Milwaukee.

For the respondent there was a brief by *Clifford K. Meldman* and *Meldman & Kahn,* all of Milwaukee, and oral argument by *Clifford K. Meldman.*

ROBERT W. HANSEN, J.   This appeal asks two questions: Does this record justify the jury verdict finding the appellant negligent at all? Does it support a jury verdict finding the respondent entirely free from negligence? This court answers the first question in the affirmative, the second in the negative.

On the issue of the negligence of the cement-furnishing company, this case was tried and submitted to the jury under the doctrine of strict liability. The strict liability rule requires that the plaintiff must prove that the product was in defective condition when it left the possession

or control of the seller; that it was unreasonably dangerous to the user or consumer; and that the defect was a cause (a substantial factor) of the plaintiff's injuries or damages.[1] As to the jury finding of defect and being unreasonably dangerous, appellant contends that the only expert testimony offered contradicted such findings and, since no expert witness was produced by the respondent, there is no basis in this record for finding either defect or danger. This contention is wrong for two reasons.

The first flaw is that, before expert testimony can be held to be a prerequisite to a trier of fact making a finding of fact as to an issue of fact, it must be found that the matter involved is ". . . not within the realm of the ordinary experience of mankind . . . ."[2] One starts with the recognition that expert testimony is not required for proof of negligence in every situation. Whether expert testimony is required in a given situation must be answered on a case-by-case basis.[3] Thus this court has held expert testimony to be required as to whether an injury was permanent,[4] whether pain would persist and for how long,[5] whether future medical expenses would be required,[6] and whether a fall occurred because of a prior leg injury.[7] On the other hand, expert testimony was held not required or even admissible as to whether a particular machine or mode of doing business was dan-

[1] *Dippel v. Sciano* (1967), 37 Wis. 2d 443, 460, 155 N. W. 2d 55, adopting rule of strict liability set forth in sec. 402A of Restatement, 2 *Torts* 2d, pp. 347, 348.

[2] *Cramer v. Theda Clark Memorial Hospital* (1969), 45 Wis. 2d 147, 150, 172 N. W. 2d 427.

[3] *Cedarburg Light & Water Comm. v. Allis-Chalmers* (1967), 33 Wis. 2d 560, 567, 148 N. W. 2d 13, 149 N. W. 2d 661.

[4] *Borowske v. Integrity Mut. Ins. Co.* (1963), 20 Wis. 2d 93, 101, 121 N. W. 2d 287.

[5] *Huss v. Vande Hey* (1965), 29 Wis. 2d 34, 39, 138 N. W. 2d 192.

[6] *Sawdey v. Schwenk* (1958), 2 Wis. 2d 532, 537, 87 N. W. 2d 500.

[7] *Globe Steel Tubes Co. v. Industrial Comm.* (1947), 251 Wis. 495, 497, 29 N. W. 2d 510.

gerous,[8] whether certain inferences could be drawn from answers to questions on an application form,[9] and whether defendant's negligence was a substantial factor in injuring plaintiff when defective bleachers collapsed.[10] In *Cramer*, from which the above summary of citations is taken, whether a hospital in the care of its patients exercised such ordinary care as their condition required was held to be a question not requiring expert testimony.[11] In any given situation, the requirement of expert testimony is an "extraordinary one," and is to be applied by the trial court "only when unusually complex or esoteric issues are before the jury." [12] We do not find the reference to complexity and esoteric character describes the situation here. Rather we find that that evidence submitted by plaintiff in light of the ordinary experience of mankind is sufficient to establish that an unreasonably dangerous defect existed in the concrete furnished by appellant.

In part, this holding is based upon a second flaw we find in the appellant's position on this point. Appellant appears to view as an expert only a person whose education or near-professional status qualifies him to describe or evaluate a situation. In the area of medical testimony, it may well be that the expert witness, qualified to express an opinion as to permanency of injuries, can only be a physician or surgeon, educated and licensed as a member of the medical profession. But we deal with cement, not medical diagnosis or prognosis, here, and special experience can qualify a person as an expert in the field as well as academic studies or baccalaureate

[8] *Hamann v. Milwaukee Bridge Co.* (1906), 127 Wis. 550, 565, 106 N. W. 1081.

[9] *Kreklow v. Miller* (1967), 37 Wis. 2d 12, 154 N. W. 2d 243.

[10] *Bruss v. Milwaukee Sporting Goods Co.* (1967), 34 Wis. 2d 688, 150 N. W. 2d 337.

[11] *Cramer v. Theda Clark Memorial Hospital, supra,* at pages 151, 152.

[12] *Cedarburg Light & Water Comm. v. Allis-Chalmers, supra,* at page 567.

degrees. This court recognizes the role and status of what might be termed a lay expert, meaning a person whose expertise or special competence derives from experience working in a field of endeavor rather than from studies or diplomas.[13] The testimony of the job foreman who had thirty-five years' experience of working in and with concrete on a daily basis was the testimony of such lay expert. Such foreman testified that neither he nor any employees he worked with had ever been burned by concrete. He testified that he had worn far less protective clothing than the plaintiff and had worked in thicker pours and not been burned until the day of this injury when he was burned by the splashing of water from the concrete onto his clothing. The plaintiff testified that he had been working in concrete supplied by appellant for two months, had gotten wet concrete on his pants and hands, elbows and face, and had not been burned. Seven other workers had been burned the same day. Appellant's quality control manager testified that it had never been reported to him that workmen working with appellant's concrete had suffered second- or third-degree burns. Additionally, appellant's expert witness testified that though he had been splashed by concrete and maintained substantial contact with wet concrete, he had never received second- or third-degree burns as plaintiff did. While not holding that the mere occurrence of a damaging event provides proof of either defect or unreasonably dangerous factors, the unexplained event when combined with evidence rebutting the existence of other probable causes is sufficient to warrant a jury finding of a defect in the concrete that was unreasonably dangerous. Respondent's evidence was sufficient to create an issue as

[13] *Luke v. Northwestern National Casualty Co.* (1966), 31 Wis. 2d 530, 535, 143 N. W. 2d 482, stating: "This court has held the opinions of experts to have some probative value even though such opinions are not based upon technical or academic knowledge but upon expertise gained from experience." [Cases cited.] *See also: Perry Creek Cranberry Corp. v. Hopkins Agricultural Chemical Co.* (1966), 29 Wis. 2d 429, 439, 139 N. W. 2d 96.

to appellant's contention that the damage was the normal result of prolonged exposure to ordinary concrete. The inference drawn by the jury that the concrete furnished was defective and unreasonably dangerous was not the only inference that could be drawn but was a reasonable one.

On the issue of establishment of a dangerous defect, appellant asserts it was error for the trial court to admit evidence that seven other employees had been burned by the same concrete mix on the same day on the same job. Reliance is upon 1 Jones, *Evidence* (5th ed.), p. 324, sec. 185, where it is stated:

"Since evidence of other similar conditions or occurrences under similar circumstances involves proof of collateral matters, a good deal of discretion is necessarily vested in the trial judge on the question of whether the evidence should be admitted. The usual considerations of undue distraction or prejudice, surprise, or undue consumption of time are inherent. . . ." [14]

A full quote from Jones on this point should include the paragraph, on page 323, stating that:

"Evidence of other accidents or similar occurrences at the same place or under similar conditions and circumstances may be admissible to show the probability of the defect in question, that the injury was caused by the defect and that the person responsible knew or should have known of the existence of the defect." [15]

While this court has held testimony as to other persons falling on a dance floor inadmissible as raising collateral matters and not proving the dangerous character of a dance floor,[16] here, where the issue revolved around whether exposure to ordinary concrete would or could

[14] 1 Jones, *Evidence* (5th ed.), p. 324, sec. 185.

[15] *Id.* at page 323. *See also:* page 324, the summary: "But an arbitrary rule of exclusion no longer has much support in the more recent authorities."

[16] *Brown v. Appleton Masonic Temple Asso.* (1943), 243 Wis. 147, 9 N. W. 2d 637.

cause burns, and where both witnesses for appellant and respondent, testified that even continued exposure to ordinary concrete had not caused second- and third-degree burns, we would find no abuse of discretion in the trial court's holding relevant and admissible testimony that seven others were burned on the same day by the same concrete mix. Both the purpose for which the evidence of other injuries similarly caused and the nature of the negligence claimed are to be considered in determining whether discretion has been abused.[17] We hold here that discretion was not abused.[18]

On the same issue of appellant's liability, challenge is made to the trial court's refusing to instruct the jury that "[t]he seller is not an insurer and the law does not require him to guarantee that his product cannot be used in such a way as to cause injury or damage. . . ." Instead the trial court instructed the jury that it was not to find the appellant negligent unless:

"2. The product which he sells is in a defective condition, unreasonably dangerous to the user or consumer or to his property.

---

[17] ". . . The true rule would appear to be that the admissibility of evidence of the existence of similar defects, or of the occurrence of other accidents or injuries of a similar nature or similarly caused, depends on the purpose for which the evidence is offered and on whether the nature of the negligence which is claimed to have caused the accident or injury in question is such that proof of other accidents or defects will tend to throw light on the issue; and, where such is the case, evidence of this character is admissible." 65A C. J. S., *Negligence,* p. 645, sec. 234(1).

[18] "There is no rule of law, however, which prevents the trial of collateral issues, since the objection thereto is purely a practical one, and the general rule is that the admission of evidence of similar acts or occurrences as proof that a particular act was done or that a certain occurrence happened, rests largely in the discretion of the trial court, . . ." 32 C. J. S., *Evidence,* p. 703, sec. 578.

" . . .
"By defective condition is meant a condition not expected by the purchaser, which then renders the product unreasonably dangerous for its intended or foreseeable use.
"To be unreasonably dangerous, the product must be dangerous to an extent beyond that which would be expected by the ordinary user with the ordinary knowledge common to the community as to its characteristics."

The instruction as given clearly required the jurors to find first the fact of a defect before finding the appellant liable. While we do not quarrel with the proposition that a seller is not an insurer and the law does not require him to guarantee that his product cannot be used in such a way as to cause injury or damage, the requested instruction went beyond this to ask the trial court to instruct that "cement cannot be made without the presence of lime as a principal ingredient," in effect requesting a trial court holding that ordinary concrete is an unavoidably unsafe product. The trouble with that is that appellant, as well as respondent, introduced evidence that ordinary concrete was not unavoidably dangerous, at least not to the degree of causing second- or third-degree burns. On the record made, instructing the jury that it must find a defect rendering the product unreasonably dangerous was proper.

The second major issue raised on this appeal relates to apportionment of negligence. The jury found the appellant 100 percent negligent and the respondent entirely free from negligence. In a memorandum decision, the trial court approved the verdict as rendered. The appellant terms the 100 percent negligence attributed to it as "shockingly and grossly disproportionate," and urges the court to find that the plaintiff was guilty, to some degree, as a matter of law, of negligence on his part as to injuries and damages sustained.

As to sustaining or reversing a jury verdict in this area of comparative negligence, the rule ". . . rigidly adhered to by this court, is that if there is credible evidence, which under any reasonable view, supports the jury's finding as to comparative negligence the finding will not be set aside." [19] This rule is ". . . particularly true when the verdict has the blessing of the trial court, and [in reviewing the verdict] . . . the evidence is to be viewed in the light most favorable to the verdict." [20]

In view of the sweeping nature of this rule or approach to review, a minority of this court, including the writer, would let the verdict stand, finding it a reasonable view of the evidence, based on the testimony of the job foreman, the fact that seven other workers were burned by the same concrete mix, because the respondent was not aware of any danger and because no negligence on his part contributed to the injuries sustained.

Appellant contends that, because the respondent knew that even ordinary concrete could inflict burns if exposure to it was prolonged and because he knew another worker had left the job because of being burned, the only reasonable view of the record compels the conclusion that he was not entirely free from negligence. Certain facts that bear upon respondent being negligent to some degree as a matter of law are not in dispute. He worked in the puddling process for six continuous hours, a half-hour lunch period being the only interruption. He wore leather ankle-top construction shoes, over which he wore ten-inch-high galoshes. He wore Levi-type trousers, tucked into the rubber galoshes but left outside the eight-inch-high work shoes. On the day of the injury, the depth of the concrete was unusually great. Respondent

[19] *Neider v. Spoehr* (1969), 41 Wis. 2d 610, 621, 165 N. W. 2d 171.
[20] *Delaney v. Prudential Ins. Co.* (1966), 29 Wis. 2d 345, 349, 139 N. W. 2d 48.

testified he did not notice whether concrete was overflowing the tops of his boots. The burns were two-inch bands around both ankles, extending from about eight inches to about 10 inches from the floor. After removing his clothing, respondent's trousers were wet from the ankle bone to approximately two inches above his rubber boots. Respondent testified that he knew that cement containing lime has a burn potential and, if left in contact with the skin for a prolonged period of time, will cause burns. Respondent testified he observed a fellow worker leave the job about noon, saying that his legs bothered him. Respondent testified that he "imagined it was the concrete. He said his skin was bothering him. He said his legs were hurting him."

Given these facts, all of which are not in dispute, the majority finds inescapable the conclusion that the record establishes that the deviation in depth from the usual working condition, combined with the knowledge that concrete, even ordinary concrete, can inflict burns and the knowledge that a fellow worker had left the job complaining of burns to skin and legs, constitutes some measure of contributing negligence. Thus viewing the evidence, the majority is required to reverse and remand for a new trial.

*By the Court.*—Judgment reversed and cause remanded for a new trial.