STATE, Respondent, v. BECKER, Appellant.

*No. State 161. Argued June 7, 1971.—Decided June 25, 1971.*
(Also reported in 188 N. W. 2d 449.)

For the appellant there was a brief by *Samson, Friebert, Sutton & Finerty* and *Robert E. Sutton,* all of Milwaukee, and oral argument by *Robert E. Sutton.*

For the respondent the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief were *Robert W. Warren,* attorney general, *William A. Platz,* assistant attorney general, and *E. Michael McCann,* district attorney of Milwaukee county.

HEFFERNAN, J. The state's only witness, Patrolman James Storney, testified that on the afternoon of January 26, 1970, he was on duty with a number of other police officers in and about the Boston Store in Milwaukee for the purpose of maintaining order in connection with a demonstration that was taking place there. At approximately 4:55 p. m. an officer named Reich arrested a female juvenile, allegedly for shoplifting. Officer Storney assisted Officer Reich in attempting to escort the girl from the store. Storney was holding the girl by her left elbow, while Reich was holding her by the other arm. Officer Storney described what then happened:

"He [Becker] was yelling in a loud voice as to the juvenile we had in custody to drop the hat [which she had allegedly stolen] and after yelling that several times he then proceeded to yell to me what my badge number was. 'What's your badge number, officer?' And I—at this point continuing to ask for my badge number he grabbed me by my right arm and began shoving his way between my partner and myself. I was on the left side of the

juvenile, and my partner was on the right side of the juvenile to her rear. At this point as the jostling took place I lost my grip on the girl, but my partner still had the grip on [her] arm. At this point I then placed—I turned around and placed Mr. Becker under arrest."

When asked to indicate how loud the defendant spoke, the patrolman said, "He was not at the top of his vocal capacity, nor was he at the bottom or at normal usage of his vocal cords. He was yelling very loudly."

The patrolman testified that there were more than ten people in the area at the time the incident occurred.

Defendant Becker was charged with disorderly conduct. The complaint stated:

"Whereas, James Storney, being first duly sworn on oath, states upon personal observation . . . that Paul Dismas Becker . . . on the 26th day of January A. D., 1970, in the County of Milwaukee, Wisconsin, did unlawfully engage in disorderly conduct under circumstances in which such conduct tended to cause and provoke a disturbance, to-wit: defendant did at 333 W. Wisconsin Ave. in the City of Milwaukee, interfere with the complainant a City of Milwaukee Police Officer while complainant was taking another person into custody, contrary to Section 947.01 (1) of the statutes, and against the peace and dignity of the State of Wisconsin . . . ."

Defendant's initial attack is upon the complaint, alleging that it was insufficient in that it lacked specificity in regard to the nature of the defendant's conduct. A complaint must state facts sufficient in themselves or admitting to reasonable inferences which are sufficient to establish probable cause. Sec. 968.01, Stats. 1969; State ex rel. Cullen v. Ceci (1970), 45 Wis. 2d 432, 173 N. W. 2d 175; State ex rel. Evanow v. Seraphim (1968), 40 Wis. 2d 223, 161 N. W. 2d 369; State v. Williams (1970), 47 Wis. 2d 242, 177 N. W. 2d 611; State ex rel. Pflanz v. County Court (1967), 36 Wis. 2d 550, 153 N. W. 2d 559. The term, "probable cause," contemplates the existence of facts and circumstances which would incite

an honest belief in a reasonable man, acting under all the circumstances, that the charges made are true. A complaint is sufficient if a fair-minded magistrate could reasonably conclude that the facts alleged justify further criminal proceedings and that the charges are not merely capricious. *State ex rel. Cullen v. Ceci, supra; Jaben v. United States* (1965), 381 U. S. 214, 224, 85 Sup. Ct. 1365, 14 L. Ed. 2d 345. While the complaint must state the essential facts constituting the crime charged, the defendant is not entitled to have the complaint give an encyclopedic listing of all evidentiary facts upon which the state intends to rely. In *State ex rel. Evanow v. Seraphim, supra,* this court said that the complaint need only give a clear and complete description of what the defendant is alleged to have done. We said, at page 230, that the complaint must answer the "Five W's":

"What is the charge? Who is charged? When and Where is the offense alleged to have taken place? Why is this particular person being charged? Actually, there is a sixth 'W.' As the journalism professor puts it, 'Unless the source (of the news) is obvious, the reader always asks at once, 'Who says so?' "

The complaint in this case meets the criteria set forth in *Evanow.* It charges the defendant, Paul Dismas Becker, with disorderly conduct, in violation of sec. 947.01 (1), Stats. It states that the offense took place on January 26, 1970, at 333 West Wisconsin Avenue in the city of Milwaukee. The defendant was being charged because he allegedly interfered with the arrest of another person whom the complainant was taking into custody. The sixth "W" is also answered, for the complaint states that the charge is based on the personal observations of the complainant. The complaint is sufficient.

We are also satisfied that the defendant's assertion that the statute was unconstitutionally applied is equally without merit. It appears that defendant claims that the activities for which he was convicted were, in fact, pro-

tected free speech and expression. We have pointed out that the guarantees against the abridgement of freedom of speech are not absolute. *State v. Zwicker* (1969), 41 Wis. 2d 497, 164 N. W. 2d 512, 32 A. L. R. 3d 531, certiorari denied, 396 U. S. 26, 90 Sup. Ct. 199, 24 L. Ed. 2d 146; *State v. Givens* (1965), 28 Wis. 2d 109, 135 N. W. 2d 780. In *Cox v. Louisiana* (1965), 379 U. S. 536, 554, 85 Sup. Ct. 453, 13 L. Ed. 2d 471, the United States Supreme Court said:

"The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy." *See, also, State v. Givens, supra; State v. Zwicker, supra; State v. Maker* (1970), 48 Wis. 2d 612, 180 N. W. 2d 707.

Conduct which "involves substantial disorder or invasion of the rights of others is . . . not immunized by the constitutional guarantee of freedom of speech." *Tinker v. Des Moines School Dist.* (1969), 393 U. S. 503, 513, 89 Sup. Ct. 733, 21 L. Ed. 2d 731; *see also:* Annot., 32 A. L. R. 3d 551, 556. The legislature has the right to reasonably regulate the conduct of its citizens for the protection of society as a whole, even when that conduct is intertwined with expression and association. *Cameron v. Johnson* (1968), 390 U. S. 611, 617, 88 Sup. Ct. 1335, 20 L. Ed. 2d 182; Garvey, *Wisconsin's Disorderly Conduct Statute: Why It Should Be Changed,* 1969 Wisconsin Law Review 602, 613.

In *State v. Zwicker, supra,* page 509, this court rejected the contention that the Wisconsin disorderly conduct statute was so unnecessarily broad as to invade the area of protected freedoms, saying:

"The statute does not proscribe activities intertwined with protected freedoms unless carried out in a manner which is violent, abusive, indecent, profane, boisterous or unreasonably loud, or conduct similar thereto, *and* under circumstances in which such conduct tends to cause or provoke a disturbance. Prohibition of conduct which has

this effect does not abridge constitutional liberty." *See also: State v. Maker, supra,* pages 615, 616.

It is apparent, taking into consideration the conduct of the defendant and the circumstances under which that conduct took place, that Becker's activities went beyond mere expression of ideas.

Sec. 947.01 (1), Stats., proscribes certain conduct:

**"Disorderly conduct.** Whoever does any of the following may be fined not more than $200 or imprisoned not more than 90 days or both:

"(1) In a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud, or otherwise disorderly conduct under circumstances in which such conduct tends to cause or provoke a disturbance."

The trial court found the statute violated in two respects—the loud yelling of the defendant and his pushing and jostling of the patrolman. We note, however, that, although the police officer testified that the defendant was "yelling very loudly," he stated the defendant was not speaking at the top of his vocal capacity. We pointed out in *Givens, supra,* page 122, that to offend against the statute, conduct must be of such a nature and under such circumstances as would "offend the normal sensibilities of average persons." The charge, however, did not allege that the defendant had engaged in unreasonably loud conduct, and there was, in fact, no testimony in regard to the offensiveness of the sound under the circumstances. It would appear that the evidence was insufficient to support the finding of guilty in this respect.

Defendant's conduct was, however, proved to be violent, and such conduct comes within the proscription of the statute. There was evidence that defendant pushed and jostled the officer, and the effect of that conduct was sufficient to cause the officer to lose his grip upon the juvenile who had just been arrested.

The defendant contends that, because he was convicted in part for conduct—his speech—which was arguably

protected by the first amendment and not proscribed by the disorderly conduct statute and not proved to be unreasonably loud so as to fall within the statute, his conviction should be reversed. He relies upon *Bachellar v. Maryland* (1970), 397 U. S. 564, 90 Sup. Ct. 1312, 25 L. Ed. 2d 570. In that case, the United States Supreme Court reversed a conviction which was based upon a general verdict under which a defendant could have been convicted for one or more of several types of conduct, some of which were constitutionally protected. The court therein reversed, because it could not determine whether the conviction was based on a finding of guilty only for conduct not constitutionally protected.

In the instant case this problem does not arise. While we have concluded that the evidence was insufficient to support the conviction on the ground of unreasonably loud conduct, the evidence was sufficient to show that the defendant engaged in pushing and jostling of a police officer—violent conduct which disturbed others and which is clearly not conduct protected by the statute. The record is clear that defendant was convicted for conduct not protected by the constitution.

Additionally, defendant claims that he was deprived of his right to confront witnesses against him. He bases this upon the fact the trial judge ruled that 27 questions asked of the complaining officer were immaterial. A careful examination of these questions indicates that they were irrelevant to the facts at issue and were directed almost entirely to the internal administration of the Milwaukee police force. They had nothing to do with the charges against the defendant.

While the right of the accused to be confronted by witnesses is guaranteed by the constitution, the cross-examination of even an adverse witness may, in the discretion of the trial judge, be hedged about with considerations of relevance and materiality. McCormick, *Evidence* (hornbook series), pp. 315, 316, sec. 152, defines these terms:

"In the courtroom the terms relevancy and materiality are often used interchangeably, but materiality in its more precise meaning looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to prove a proposition which is not a matter in issue nor probative of a matter in issue, the evidence is properly said to be immaterial. . . . Relevancy in logic is the tendency of evidence to establish a proposition which it is offered to prove. Relevancy, as employed by judges and lawyers, is the tendency of the evidence to establish a material proposition."

Although on cross-examination counsel is permitted to question witnesses on matters collateral to the case to test credibility, a witness may not be questioned as to matters that are wholly irrelevant or immaterial. A trial court's decision not to permit cross-examination as to such matters is sustainable as an exercise of judicial discretion. 4 Jones, *Evidence* (5th ed.), pp. 1714, 1715, sec. 915.

Defense counsel contends, however, that the questions to which the state's objection were sustained were material in respect to whether defendant's conduct was protected activity under the first amendment and whether the conduct of the police officers and the police department constituted an unlawful prior restraint on speech. This argument was made for the first time after trial and is inconsistent with defense counsel's conduct during the course of trial when counsel declined the trial judge's invitation to make an offer of proof to show the materiality of the questions excluded. In addition, defense counsel declined the trial court's invitation to explain the theory of the defense as an aid to ruling on these questions.

Where counsel fails to state the purpose of a question to which objection is sustained on grounds of immateriality, it is within the discretion of the trial court to exclude the evidence. *State v. Moffett* (1970), 46 Wis. 2d 164, 174 N. W. 2d 263; *State v. Klein* (1964), 25 Wis.

2d 394, 130 N. W. 2d 816, certiorari denied in *Sterger v. Wisconsin,* 380 U. S. 951, 85 Sup. Ct. 1083, 13 L. Ed. 2d 969; *see also: Deja v. State* (1969), 43 Wis. 2d 488, 168 N. W. 2d 856. The purpose of such a requirement is explained by Professor McCormick:

"The reason for the requirement is that the judge must be fairly informed of the basis for the proponent's claim of admissibility and the appellate court may understand the scope and effect of his ruling. To this end the statement must be reasonably specific, must state the purpose of the proof offered unless that is apparent, and where the offered facts suggest a question as to their materiality or competency the offer must show the facts on which relevancy or admissibility depends." McCormick, *supra,* pp. 113, 114, sec. 51.

*By the Court.*—Judgment affirmed.