STATE, Respondent, v. ELSON, Appellant.

*No. State 20. Argued June 5, 1973.—Decided June 29, 1973.*
(Also reported in 208 N. W. 2d 363.)

For the appellant there was a brief by *D. G. Graff* and *Graff & Schrank,* all of Madison, and oral argument by *D. G. Graff.*

For the respondent the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HANLEY, J. Three issues are presented on appeal.

1. Does the complaint state sufficient facts to support a finding of probable cause that defendant engaged in disorderly conduct;

2. Was there sufficient credible evidence to prove the defendant guilty of disorderly conduct beyond a reasonable doubt; and

3. Did the trial court commit prejudicial error in admitting opinion testimony of certain of the state's witnesses?

*Sufficiency of complaint.*

The defendant contends now, as he did in the trial court, that the complaint does not state facts sufficient in themselves or through reasonable inferences to establish "probable cause."

By statute, a criminal ". . . complaint is a written statement of the essential facts constituting the offense charged," sec. 968.01, Stats., and in the case of *State ex rel. Evanow v. Seraphim* (1968), 40 Wis. 2d 223, 161 N. W. 2d 369, this court gave common sense meaning to the statute in that the complaint must answer certain fundamental questions. At page 230, it is stated:

"What is the charge? Who is charged? When and Where is the offense alleged to have taken place? Why is this particular person being charged? [and] . . . 'Who says so?' "

The sum of the answers to the above six questions as contained in the complaint ". . . must meet the test of 'probable cause.' " *State ex rel. Cullen v. Ceci* (1970), 45 Wis. 2d 432, 443, 173 N. W. 2d 175; *State v. Becker* (1971), 51 Wis. 2d 659, 188 N. W. 2d 449.

"A complaint is sufficient if a fair-minded magistrate could reasonably conclude that the facts alleged justify further criminal proceedings and that the charges are not merely capricious. *State ex rel. Cullen v. Ceci, supra; Jaben v. United States* (1965), 381 U. S. 214, 224, 85 Sup. Ct. 1365, 14 L. Ed. 2d 345." *State v. Becker, supra,* at page 663.

In testing the complaint, both facts and the reasonable inferences arising from the facts may be looked to.

"A complaint must state facts sufficient in themselves or admitting to reasonable inferences which are sufficient to establish probable cause." *State v. Becker, supra,* at page 662.

The defendant was charged with disorderly conduct and the complaint so charging stated that he:

". . . on the 24th day of October, 1971, at the City of Madison, in said County of Dane, State of Wisconsin, did in a public place engage in boisterous and otherwise disorderly conduct under circumstances in which such conduct tended to cause and provoke a disturbance;

"1. FACTS: on the above date, your complainant, a Security Officer employed at the Mendota State Hospital, City of Madison, County of Dane, State of Wisconsin, was dispatched to Stovall Hall, located in Mendota State Hospital, *in reference to a complaint of an undesirable person therein.* At that time your complainant confronted the defendant, who stated to your complainant that he wished to see a patient named Cathy Comte. He indicated that he was her attorney. Your complainant then contacted Dr. Pyle, the Clinical Director of Mendota State Hospital, and *was told that the defendant did not have permission to be present in the ward. The defendant then stated to your complainant that it would take physical force to remove him, and that an arrest was necessary.* Your complainant informed the defendant that he must remove himself from the ward and if he failed to so do he would be arrested. *Thereafter, Officer Gerl of the Madison Police Department arrived and again asked defendant to leave and the defendant again refused, stating that physical force would be necessary to remove him from the ward. There-*

*after, your complainant and Officer Gerl took the defendant by the arm and escorted him from the building. During the period of time when your complainant was attempting to remove the defendant from the ward, numerous patients were gathering in response to the defendant's arguments and refusals to leave the ward.*

"2. And that this complaint is based on personal knowledge of your complainant." (Emphasis added.)

The above complaint charges one Edward Ben Elson —the defendant—with disorderly conduct in violation of sec. 947.01, Stats., and goes on to state that the offense took place on October 24, 1971, at Stovall Hall in the Mendota State Hospital. Likewise, the complaint states that it is based on the personal knowledge of the complainant, Frederick Williams, a security officer employed at the hospital. The only question, therefore, is whether it sufficiently specifies the facts of the offense charged.

Wisconsin's disorderly conduct statute, sec. 947.01, Stats., in part provides:

"(1) In a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud, or otherwise disorderly conduct under circumstances in which such conduct tends to cause or provoke a disturbance."

Under the statute, two elements are required. "The first element being that the defendants engaged in disorderly conduct, and the second element being that [under the circumstances] such conduct tended to cause or provoke a disturbance." *State v. Zwicker* (1969), 41 Wis. 2d 497, 514, 164 N. W. 2d 512.

The initial assertion in the complaint that defendant's conduct was "boisterous and otherwise disorderly . . ." standing alone is insufficient. *State v. Smith* (1971), 50 Wis. 2d 460, 184 N. W. 2d 889. Similarly, there are no facts alleged, it would seem, from which it could be inferred that the defendant's conduct was boisterous or that it was ". . . violent, abusive, indecent, profane, . . .

unreasonably loud . . ." The question, therefore, becomes whether there are any facts from which it could be inferred that defendant's conduct was "otherwise disorderly."

Although no precise meaning can be imputed to the phrase "otherwise disorderly conduct," this court in *State v. Givens* (1965), 28 Wis. 2d 109, 115, 135 N. W. 2d 780 stated:

"When the statute, after the specific enumerations, in a 'catchall' clause proscribes 'otherwise disorderly conduct' which tends to 'provoke a disturbance,' *this must mean conduct of a type not previously enumerated but similar thereto in having a tendency to disrupt good order and to provoke a disturbance.* Such interpretation rests upon the rule of *ejusdem generis.*" (Emphasis added.)

The complaint states that the complainant, a security officer, went to Stovall Hall, Mendota State Hospital, in response to a complaint "of an undesirable person thereon;" that thereafter a Madison police officer arrived and who requested defendant to leave and the defendant again refused, repeating that physical force would be necessary to remove him from the ward; that during the time the security officer was attempting to remove the defendant from the ward, numerous patients were gathering in response to the defendant's arguments and refusals to leave the ward.

In *State v. Maker* (1970), 48 Wis. 2d 612, 180 N. W. 2d 707, this court, at page 616, stated:

"This court's emphasis upon the relatedness of conduct and circumstances in the statute is no more than a recognition of the fact that what would constitute disorderly conduct in one set of circumstances, might not under some other. When a famed jurist observed, 'The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic,' the comment related to the crowdedness of the theater as well as to the loudness of the shout.

It is the combination of conduct and circumstances that is crucial in applying the statute to a particular situation."

Defendant's conduct might be tolerated under different circumstances such as a confrontation on a public street. It cannot be tolerated in a mental hospital ward in the presence of numerous patients.

We think the facts alleged in the complaint meet the test of the "six W's" set forth in *State v. Becker, supra,* at page 663. The magistrate reasonably concluded that the facts alleged justified further criminal proceedings.

*Sufficiency of the evidence.*

The defendant contends that the evidence adduced, believed and rationally considered by the jury was not sufficient to prove him guilty beyond a reasonable doubt. Under the cases already cited, the evidence must disclose that his conduct was "violent, abusive, indecent, profane, boisterous, unreasonably loud, or . . ." was ". . . otherwise disorderly conduct . . ." It also must be shown that the conduct occurred ". . . under circumstances in which such conduct tends to cause or provoke a disturbance . . . ."

Prior to October 24, 1971, defendant, an attorney, was retained by a patient at Mendota State Hospital to try to effect her release from that institution. On Sunday, October 24, 1971, at 2:30 p. m., defendant went to the hospital and asked to see his client, Mrs. Cathy Comte, at the ward where she was confined. Visiting hours were in effect and 10 or 15 visitors were in the dayrooms and hallway near the ward's nurses' station.

On defendant's prior visit to the Dane County unit, October 3, 1971, the staff had refused to provide him a private place to interview another client, requiring first that he and the client stay on the ward and later providing a separate room but with a nurse always present. On the visit involved here, the hospital aide

in charge of signing in visitors, Eleanor Lynch, told the defendant that he could not be allowed to visit and that the hospital administration had a new rule which forbade his presence on the ward, she thought, because his presence had been agitating to the patients in the past. She testified that she also told the defendant that "We could provide a room for him off the ward, and we could perhaps contact administration, but otherwise he couldn't visit."

On direct examination, the defendant stated that Mrs. Lynch told him, "If you get off the ward, perhaps we will let you see Mrs. Comte." Defendant refused to leave and the aide summoned her supervisor, Nurse Linda Walter.

The nurse also asked him to leave, and he again refused. She and the aide talked with the defendant near the nurse's station within hearing of two or three patients and some visitors. Both the nurse and aide testified that during this conversation, one of the patients, Rose Haber, became "agitated" and sometimes spoke loudly to the defendant who listened to her. She testified that if agitated enough, Rose will strike out on occasion. The nurse called the hospital's chief of security, the complainant, Frederick Williams.

The chief of security joined the group near the nurse's station and a male practical nurse from another ward, Dennis Gallagher, arrived soon afterward. They both asked the defendant to leave. Defendant insisted he had the right to remain and visit with his client. The chief of security suggested the defendant sue the hospital and get the rule changed so he could be allowed on the ward. Defendant stated he would not leave unless arrested and physically removed. He was told he would not be arrested if he would leave.

Gallagher, the male nurse, testified that he really did not know exactly why everyone wanted the defendant to leave the ward, but that he knew by the gathering of

five or six patients within the immediate area that it would be better if the defendant's presence were removed. He stated that some of the patients have been known to blow up when they get excited. "When one patient blows or gets high, then more patients go along with it and before long it's out of hand."

There was testimony that during the conversation with the security officer and the male nurse, defendant's tone was louder than normal at times, and he made statements about conditions at the hospital such as "The patients have not been afforded the right to telephone attorneys;" "Patients are given Thorazine (a drug); How do you know (if you are a patient) whether you are allergic to Thorazine;" "I feel I am being crucified;" and "Jesus Christ was also crucified, on the cross." Three patients were within earshot of the conversation. One, Rose Haber, was pushing, milling around and talking loudly. Another was shuffling his feet and appeared to the male nurse to be "getting a little agitated or high" and the third watched or listened quietly.

As was the case with the complaint, a review of the record also demonstrates that defendant's conduct does not fall into any of the specifically enumerated categories forbidden by sec. 947.01 (1), Stats. While there is evidence that establishes that defendant's voice was "louder than normal at times," this does not establish that it was "boisterous" or "unreasonably loud." The defendant's conviction must, therefore, be considered on the "otherwise disorderly conduct" prohibition of the statute.

To determine whether defendant's conduct was similar to the specifically enumerated categories, resort must be had to the purpose of the statute itself. In *State v. Zwicker, supra,* at page 508, this court stated:

"Wisconsin's disorderly conduct statute proscribes conduct in terms of results which can reasonably be expected therefrom, rather than attempting to enumerate

the limitless number of antisocial acts which a person could engage in that would menace, disrupt or destroy public order. The statute does not imply that all conduct which tends to annoy another is disorderly conduct. *Only such conduct as unreasonably offends the sense of decency or propriety of the community is included.* The statute does not punish a person for conduct which might possibly offend some hypercritical individual. The design of the disorderly conduct statute is to proscribe substantial intrusions which offend the normal sensibilities of average persons *or which constitute significantly abusive or disturbing demeanor in the eyes of reasonable persons."* (Emphasis added.)

Implicit in both the defendant's arguments at trial and now on appeal is that his conduct was occasioned by the arbitrariness of the hospital rule which forbade his presence on the ward. While this court cannot now rule on the propriety of the hospital's ruling with respect to the defendant, it is clear that defendant's statements about some patients possibly being allergic to the drug "Thorazine," the denial of telephone privileges for patients to call attorneys, and defendant's feeling that he, like "Jesus Christ" was being crucified, when made on the ward of a mental hospital, arguably constitutes ". . . significantly abusive or disturbing demeanor in the eyes of reasonable persons." At least a jury could so find.

Just as in *State v. Givens, supra,* what is of particular importance in the case at bar is defendant's repeated refusals to leave the ward. In *Givens,* demonstrators conducted a "sit-in" on the floor of the waiting room and corridor leading to the office of the Milwaukee county board of supervisors. Before being arrested, the demonstrators were asked to "get up" and cautioned that if they refused, they would be arrested. This court stated at page 121:

"The majority of the members of the court, however, rely in affirming the judgments upon the further fact,

in addition, that each defendant deliberately and knowingly violated commands of those in charge of the area."

In the case at bar, it must likewise be concluded that the jury felt defendant's repeated refusals to leave and, at least, his failure to co-operate by meeting with his client in a separate room off of the ward substantially contributed to a jury finding that his conduct was "otherwise disorderly."

Defendant contends that he was only attempting to protect his client's constitutional right to an attorney as was his duty to do, and consequently, his conduct was reasonable under the circumstances. Defendant could have accomplished the protection of his client's rights just as well in the separate room that was offered as in the ward area.

In *State v. Givens, supra,* at page 118, it is stated that:

"Can it be said that the acts in the case at bar were protected because the defendants were validly exercising their constitutional rights of freedom of speech, freedom of assembly, and freedom to petition for the redress of grievances? The answer is 'No,' and the reason is that such constitutional protections are not absolute. As the United States supreme court recently said in *Cox v. Louisiana, supra,* at page 554:

" 'The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order. A restriction in that relation, designed to promote the public convenience in the interest of all, and not susceptible to abuses of discriminatory application, cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection. One would not be justified in ignoring the familiar red light because this was thought to be a means of social protest. Nor could one, contrary to traffic regulations, insist upon a street meeting in the middle of Times Square at the rush hour as a form of freedom of speech or assembly. Govern-

mental authorities have the duty and responsibility to keep their streets open and available for movement. A group of demonstrators could not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations.' "

The testimony in the record concerning the fact that there were from 10 to 15 visitors in the dayrooms and hallway near where the defendant was standing, together with the three patients in earshot who were pushing and milling around, shows that defendant's conduct tended to disrupt the good order of the hospital and create a disturbance. The jury could conclude that defendant's conduct tended to cause or provoke a disturbance under the circumstances presented.

*Expert testimony.*

Objection is taken by defendant to hypothetical questions which were asked of both the security officer and the complainant, Frederick Williams, and Dr. Zorislav Greblo, a psychiatrist on the staff at the hospital. Over objection of the defendant that the witness lacked expertise, Williams was asked the following question on direct examination:

"Based upon your experience as a police officer and also upon your experience as a security officer for Mendota State Hospital, do you have an opinion as to whether or not the defendant's conduct, both his refusal to leave and his various statements, would have tended to cause or provoke a disturbance on that particular day, October 24, 1971 . . . ?"

Williams responded by saying:

"I felt that his conduct there was creating a disturbance and that's why I signed the complaint that he did create a disturbance."

Williams has been director of security at Mendota State Hospital for three and one-half years and before

that was a member of the Madison police department for twenty-three years, and while employed in that capacity made approximately 30 arrests for disorderly conduct.

In deciding whether a witness possesses sufficient knowledge, background or experience to testify as an expert, the trial court had wide discretion. *Netzel v. State Sand & Gravel Co.* (1971), 51 Wis. 2d 1, 186 N. W. 2d 258. If Williams was an expert and, therefore, entitled to respond to the question propounded to him, it is apparent that he must fulfill "the role and status of what might be termed a lay expert, meaning a person whose expertise or special competence derives from experience working in a field of endeavor rather than from studies or diplomas." *Netzel v. State Sand & Gravel Co., supra,* at page 8.

The testimony of Dr. Zorislav Greblo who testified that he was a physician and psychiatrist, is challenged because there was no evidence that he had really practiced medicine or psychiatry, or that he was even licensed to practice or had actually finished medical school and internship or residence or any showing that he had any experience with mental institutions and patients therein other than his fifteen months at Mendota. The testimony of the doctor, however, was that he was a physician and psychiatrist, having been a psychiatrist for somewhat over ten years, having attended medical school; after that, he had a one-year internship and three years of residence training in Chicago; that he was the service chief on the Dane County Unit (of Mendota State Hospital) which was organized about fifteen months before the trial, and that the witness had been on that unit all during that time. The prosecution then offered the doctor as an expert in psychiatry to which the defendant objected "on grounds that I don't believe you can have an expert in psychiatry." Psychiatrists are, of course, regarded as expert witnesses;

for that matter, physicians and general practitioners who have made some study of insanity or have had some experience with mental cases are deemed qualified as experts. *Nelson v. State* (1967), 35 Wis. 2d 797, 815, 151 N. W. 2d 694.

A challenge is also made to the hypothetical question which Dr. Greblo was asked and permitted to answer.

Two hypothetical questions were asked of Dr. Greblo. The first question was objected to on the ground that psychiatrists are no better predictors of behavior than any other group of people. The trial court sustained the objection on the ground that the question was too long and contained too many "ifs." As rephrased, the question was substantially the same as before:

"*Q.* If an individual were present on the Dane County Ward, in the presence of patients made three statements, the three statements that I went over before ['The patients aren't afforded a right to a phone to call counsel,' the second, 'God was crucified on the cross,' or some reasonable facsimile thereof; the third statement being that the patients are administered Thorazine or other drugs, 'How do you know you're not allergic to them?'] could this tend to cause or provoke a disturbance on that particular ward?"

"*A.* Yes, I think so."

As to the second question as rephrased, the defendant made no objections.

Defendant likewise challenges the testimony of Williams and Dr. Greblo on the grounds that they could testify to ultimate facts only if their testimony involved matters of science, art or special skill. *Fehrman v. Smirl* (1963), 20 Wis. 2d 1, 121 N. W. 2d 255, 122 N. W. 2d 439.

As to the facts in this case, the defendant contends the jury was just as competent to form opinions and draw inferences as were the witnesses, and consequently, their testimony invaded the province of the jury.

If the defendant engaged in his conduct at "high noon" in downtown Madison, the jury could most properly judge for itself whether it was likely to cause or provoke a disturbance. This, however, was not the case. Defendant's conduct occurred in the ward of a mental hospital and to this extent, the psychiatrist Greblo had worked with the patients on that ward for fifteen months, was peculiarly qualified to predict the potential reaction which such conduct would have.

The circuit court's decision on appeal makes clear that the testimony would be sufficient to uphold the conviction, even without the opinion and testimony of Dr. Greblo and Mr. Williams. We agree with that determination. Therefore, the admission of such testimony, if error at all, would be at most cumulative and, therefore, harmless. *Kopacka v. State* (1964), 22 Wis. 2d 457, 466, 126 N. W. 2d 78.

Defendant also contends that he is entitled to a discretionary reversal in the interest of justice on the ground that the alleged errors taken in their entirety so require. The alleged errors relate to the numerous evidentiary objections which the state made to defendant's attempt to introduce facts relating to the lawsuit that he had brought against the hospital officials; the procedures for patient contact of lawyers; and other objections which were made to defendant's examination of himself in narrative fashion. These facts were not relevant to the issues being litigated. A new trial in the interest of justice will be granted only if there has been an apparent miscarriage of justice and it appears that a retrial under optimum circumstances will produce a different result. *Okrasinski v. State* (1971), 51 Wis. 2d 210, 219, 186 N. W. 2d 314. In view of the sufficiency of the evidence, even without the testimony which is alleged to constitute the basis of alleged errors, there

is no probability of a different result if a new trial were granted.

*By the Court.*—Order affirmed.

WILKIE, J. *(dissenting).* I would reverse, as would Mr. Justice HEFFERNAN, but for a different reason. I do not agree with his dissenting opinion in *Givens* or with his analysis of the disorderly conduct statute here, reflecting his views in *Givens*. However, I do agree with Mr. Justice HEFFERNAN's analysis finding the complaint insufficient. It does not specify conduct proscribed by the disorderly conduct statute. I would reverse for the reason that the complaint is insufficient.

HEFFERNAN, J. *(dissenting).* The majority reaches its result by a boot-strapping operation that assumes the meaning of the statutory phrase it purports to interpret. While it concedes that the complaint is insufficient because there is no factual allegation of "boisterous" conduct, it finds the facts of the complaint sufficient to allege "otherwise disorderly conduct." The facts of the complaint are merely that the defendant was asked to leave Stovall Hall, where he had gone to see a client. He refused to leave; but after the refusal and argument, the officer took the defendant by the arm and escorted him from the building.

The majority opinion cites *Givens* that "otherwise disorderly" means conduct similar to that enumerated in the statute, *i.e.,* behavior that is violent, abusive, indecent, profane, boisterous, or unreasonably loud. Elson's conduct as alleged in the complaint is similar to none of those enumerated in the statute. While the complaint alleged that Elson said he would not go without the use of force, it also alleges that he left quietly and without resistance.

As in *Givens,* the majority has given an unconstitutional gloss to a statute that under a restricted view

would be constitutional. The facts alleged in the complaint do not fall squarely within the prohibition of the statute, and the interpretation which the court has given to "otherwise disorderly" shows that the statute is vague and subject to almost any interpretation that a complainant or a court wishes to put upon it.

It appears to this writer that the issuance of a complaint and warrant after the defendant peaceably left the premises raises grave questions of abuse of the criminal processes. The record as a whole reveals that Elson was concerned about the proper treatment and civil liberties of inmates at the institution. The record shows that he alone was singled out, by a patently illegal rule that denied certain rights of access to patients. It would appear to the writer that this prosecution was instituted not because of what Elson had done, but because of who he was—a lawyer who considered it his duty to protect his clients in the face of official arrogance, a thorn in the side of the hospital authorities. The record shows pique not at what Elson did at Stovall Hall on October 24, 1971, but at his course of conduct that had irritated the authorities to the extent that they denominated him, as the complaint reveals, an "undesirable person."

While the writer has no doubt of the right of the hospital authorities to remove from the premises any person who conducts himself in such a way as to disturb or endanger the welfare of the patients, this is a far cry from initiating criminal sanctions against one who has peaceably left the premises.

The interpretation the majority places upon the statute in this case typifies the abuse of the criminal process that results from statutory vagueness. This is a prosecution that should never have been brought.

I am authorized to state that Mr. Justice BEILFUSS joins in this dissent.