Joan BULIK and Sylvia Sabol, personal representatives of the Estate of Evelyn G. Lui, Plaintiffs-Respondents,†

v.

ARROW REALTY, INC., OF RACINE, Defendant-Appellant,

ZAYRE CORPORATION, Liberty Mutual Insurance Company, Rapids Drive Shopping Center, Inc., and Belz Investment Corporation, Defendants.

Court of Appeals

*No. 89-0971. Submitted on briefs October 12, 1989.—Decided January 16, 1990.*

(Also reported in 453 N.W.2d 173.)

†Petition to review denied.

For defendant-appellant there were briefs by *Charles H. Bohl* and *Rebecca Leair* and *Frisch Dudek Ltd.*, of Racine.

For plaintiffs-respondents there was a brief by *Duane L. Arena, S.C.*, of Racine.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Arrow Realty, Inc., of Racine, a defendant in a personal injury suit, appeals an order denying it costs and reasonable attorney fees pursuant to secs. 802.05(1)(a) and 814.025, Stats. Arrow maintains that plaintiffs' trial attorney placed in evidence a lengthy hospital record and a $40,000 medical bill to support a $250,000 damage claim in a default judgment proceeding,

despite all indications that the documents had no relationship to the injury in litigation.

This case was before this court earlier in *Bulik v. Arrow Realty, Inc.,* 148 Wis. 2d 441, 434 N.W.2d 853 (Ct. App. 1988). That decision vacated a default judgment for lack of personal jurisdiction attributable to a failure to name Arrow as a party defendant in the summons. Upon remand for dismissal, the circuit court ruled that it had no jurisdiction to grant Arrow's motion for costs and fees.[1] The circuit court also declined to make findings of fact addressing whether plaintiffs' trial counsel was subject to sanctions. Because the circuit court has personal jurisdiction over the plaintiffs and their attorney, it has authority to impose sanctions. We also conclude that there exists no factual issue bearing on whether plaintiffs' former counsel violated sec. 802.05, Stats. We therefore reverse the order and remand for a hearing to determine and impose appropriate sanctions.

This appeal arises out of an action alleging a slip and fall at a Racine shopping center on February 20, 1985, by the late Evelyn G. Lui, eighty years old at the time.[2] Arrow failed to respond to the summons and complaint. At a hearing on a motion for default judgment, as proof of Lui's damages, her attorney made representations on the record and filed an affidavit that forms the nucleus of Arrow's claim for costs and fees. The affidavit

---

[1]Plaintiffs did not oppose dismissal; evidence disclosed that Arrow was not connected with the property when the injury occurred. Arrow argues that counsel's failure to investigate and discover this fact is a separate ground for sanctions. We do not address this contention in view of our decision on the hospital records.

[2]After filing the original appeal in 1988, Lui died. This court authorized substitution of the co-personal representatives of Lui's estate as plaintiffs.

incorporated the hospital records and billings by reference and states:

> (2) That, upon information and belief, during the course of her treatment by Dr. Richard Mueller, said physician informed the plaintiff that the infirmities necessitating medical treatment and the disability which she now suffers are a result of the fall which gives rise to this action;
>
> . . ..
> (4) That the *medical expenses incurred by the plaintiff in treatment of these injuries, as indicated by the records* of St. Mary's Hospital, *are $40,282.05;*
> (5) That submitted herewith is the certified medical record of the plaintiff's stay at St. Mary's hospital, and the itemization of medical costs; . . ..
> (Emphasis supplied.)

The court relied upon the affidavit, stating:

> [Counsel] has filed a certified copy of the hospital records consisting of documents in a stack of approximately four to five inches high.
> Based on his statements, and the information contained in the affidavit—the affidavit together with the hospital records, the Court makes a finding that the relief prayed for is appropriate under the circumstances and the Court orders judgment against Arrow Realty in the amount of $250,000.

## PERSONAL JURISDICTION

The failure to properly name a party defendant merely denied the court personal jurisdiction to proceed against Arrow. It did not deprive the court of jurisdiction over the plaintiffs and their attorney to impose sanctions for alleged misconduct. Plaintiffs and their counsel

were properly before the court based upon their voluntary presence in pursuit of a claim.

## VIOLATION OF SEC. 802.05, STATS.

Counsel's affidavit constitutes a certificate that he read it; that to his knowledge, after reasonable inquiry, it is well-grounded in fact; and that it is not used for an improper purpose, including harassment or needless increase in the cost of litigation. This is the import of sec. 802.05(1)(a), Stats.:

> *The signature of an attorney . . . constitutes a certificate that* the attorney . . . has read the pleading, motion or other paper; that *to the best of the attorney's . . . knowledge, information and belief, formed after reasonable inquiry,* the pleading, motion or other *paper is well-grounded* in fact . . . and that the pleading, motion or other paper is not used for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation . . .. If the court determines that an attorney or party failed to read or make the determinations required under this subsection before signing any petition, motion or other paper, the court may, upon motion or upon its own initiative, impose an appropriate sanction on the person who signed the pleading, motion or other paper . . .. The sanction may include an order to pay to the other party the amount of reasonable expenses incurred by that party because of the filing of the pleading, motion or other paper, including reasonable attorney fees. (Emphasis supplied.)

Sanctions under sec. 802.05, Stats., are imposed only if the court "determines that an attorney or party failed to read or make the determinations required . . . before signing . . .." The required determinations refer

to the reasonable inquiry to assure the contents of the document are well-grounded in fact. The circuit court held a hearing to address Arrow's motion for sanctions. Although arguments were made, neither side offered evidence to supplement or explain either the affidavit or the hospital records.

In reviewing the affidavit and hospital records, we must therefore first determine whether those documents raise competing factual inferences. The court of appeals is not empowered to make findings of fact. *Wurtz v. Fleischman,* 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155, 159 n. 3 (1980). Where only one reasonable inference can be drawn from the evidence, however, the drawing of that inference is a question of law. *VTAE, Dist. 13 v. DILHR,* 76 Wis. 2d 230, 240, 251 N.W.2d 41, 46 (1977). Conversely, of course, if competing inferences can be drawn from the evidence, the matter must be remanded to the circuit court for resolution. Inferences must be drawn from established facts that logically support them. *See Hill Dry Goods Co. v. Industrial Comm'n,* 217 Wis. 76, 84, 258 N.W. 336, 339 (1935).

Plaintiffs' counsel suggests that no inferences or conclusions whatsoever from the factual information in the hospital records can be made without interpretation from a medical expert.[3] We disagree. Expert testimony is necessary only when the fact-finder faces unusually complex or esoteric issues. *Netzel v. State Sand & Gravel Co.,* 51 Wis. 2d 1, 7, 186 N.W.2d 258, 262 (1971). A review of the hospital records, including Dr. Mueller's reports contained therein, disclose a detailed but nevertheless readily understandable explanation of Lui's ill-

[3]The plaintiffs and their original attorney appeared and were represented at the sanctions hearing by present counsel of record.

nesses and medical history. We therefore conclude that no remand for fact finding is needed in order to answer this inquiry: Could an attorney read this hospital record and conclude without further reasonable inquiry that a representation that those records reflect treatment for the injuries in litigation was well-grounded in fact?

The hospital records reflect that Lui was first admitted to the hospital in a diabetic coma on August 28, 1985, over six months after the fall in question. One physician's typewritten, detailed medical history concluded that Lui's coma was "secondary to hypoglycemia from oral hypoglycemic agents." Other references in Dr. Mueller's reports note that Lui had been advised earlier that day not to take her medications, but did so mistakenly. He also noted that "[t]his is what is felt to have resulted in her admission at the present time . . .. She was recently at the Mayo Clinic for evaluation of this as well." "She . . . has been followed there for many years . . .."

Lui's second hospitalization on September 30, 1985, with "right-sided weakness and severe knee swelling and pain" led to a "CT scan . . . because of a fall that she had sustained several weeks before, with continued dizziness since this time." The knee pain was attributed to "osteoarthritis . . . gout . . . or exacerbation of her current disease." Lui's lifetime medical history included various falls in recent months but made no reference to the February 20 incident.

Lui's statement tying the hospital records to the injury in litigation also called for reasonable inquiry. First, Dr. Mueller's written reports are in direct conflict with Lui's allegation. Further, while under Dr. Mueller's care, the records reflect Lui's apparent impaired ability to communicate. The hospital records state that she has "[s]ome difficulty formulating thoughts to verbalize,

which pt says is 'normal for her' (verified by Dr. Mueller)." The notes indicate: "Many prompts and cues were necessary to keep Mrs. Lui on task. Auditory processing abilities also appear to be decreased." The records are replete with information that would cause the reader to immediately question any alleged connection between the treatment at the hospital and a fall in February 1985.

The undisputed and easily understood content of the hospital records, incorporated by reference into counsel's affidavit, leads to only one conclusion: The statements of counsel were not well-grounded in fact after reasonable inquiry, and the affidavit was used for an improper purpose, to prove a damage claim through either negligent or intentional misrepresentation.

Finally, an analysis of the application of sec. 814.025, Stats., providing costs for frivolous claims is unnecessary. That statute provides in part: "To the extent s. 802.05 is applicable and differs from this section, s. 802.05 applies." Sanctions for an alleged violation of sec. 814.025 would be duplicitous.[4] This matter is therefore remanded for imposition of appropriate sanctions as provided under sec. 802.05, Stats.

---

[4]Counsel also stated on the record at the default hearing:

Your Honor, *let me explain what that record together with the certified copy of the hospital record* which I would file with the court at this time *indicates* occurred with Mrs. Lui.

. . . [S]he tripped and hit her head. Thereafter, she . . . suffered a blood clot that went to the brain and necessitated brain surgery.

. . . [A]nd based upon the extensive medical record and the medical expenses, and the injury to Mrs. Lui, we're asking for judgment in the amount of $250,000. (Emphasis supplied.)

*By the Court.*—Order reversed and cause remanded with directions.