STATE, Respondent, v. MAKER, Appellant.

*No. State 51.  Argued October 9, 1970.—Decided November 3, 1970.*
(Also reported in 180 N. W. 2d 707.)

. . . .”

For the appellant there was a brief by *Eisenberg, Kletzke & Eisenberg,* attorneys, and *Alan D. Eisenberg* and *Sander N. Karp* of counsel, all of Milwaukee, and oral argument by *Alan D. Eisenberg.*

For the respondent the cause was argued by *Theodore J. Hodan,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

ROBERT W. HANSEN, J.   The maintenance of ordered liberty is a basic objective of our constitutional form of government.   Order and liberty are alike to be protected, neither to be extinguished in favor of the other.   Order without liberty is tyranny.   Liberty without order is anarchy.   The constitutional mandate is that both excesses be avoided.[1]

[1] ". . . The constitutional guarantee of liberty implies the existence of an organized society maintaining a public order, without which liberty itself would be lost in the excesses of anarchy. . . ." *Cox v. Louisiana* (1965), 379 U. S. 536, 554, 85 Sup. Ct. 453, 464, 13 L. Ed. 2d 471.

In any challenge to the constitutionality of a statute defining and prohibiting disorderly conduct, as to words spoken [2] or conduct engaged in,[3] the right to maintain the public peace must be considered along with the imperative to protect constitutionally assured personal freedoms. Here the appellant urges that we find unconstitutional as overbroad the Wisconsin statute prohibiting disorderly conduct.[4] Here, as in earlier cases,[5] we uphold the constitutionality of that statute finding it to be a proper legislative response to the Siamese twin-like mandate to maintain public order and protect personal freedoms, repeating that:

"The language of the disorderly conduct statute is not so broad that its sanctions may apply to conduct protected by the constitution. The mere propounding of un-

[2] ". . . The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. . . ." *Id.* at page 554.

[3] *United States v. O'Brien* (1968), 391 U. S. 367, 377, 88 Sup. Ct. 1673, 20 L. Ed. 2d 672. (Draft card burning, though assumed to be symbolic conduct was subject to regulation in light of an "important or substantial governmental interest.") *See also: Tinker v. Des Moines Independent Community School Dist.* (1969), 393 U. S. 503, 89 Sup. Ct. 733, 21 L. Ed. 2d 731.

[4] Sec. 947.01, Stats., providing: "Whoever does any of the following may be fined not more than $100 or imprisoned not more than 30 days.

"(1) In a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud, or otherwise disorderly conduct under circumstances in which such conduct tends to cause or provoke a disturbance; or

"(2) With intent to annoy another, makes a telephone call, whether or not conversation ensues."

[5] *State v. Givens* (1965), 28 Wis. 2d 109, 135 N. W. 2d 780; *State v. Zwicker* (1969), 41 Wis. 2d 497, 164 N. W. 2d 512, dismissed (1969), 396 U. S. 26, 90 Sup. Ct. 199, 24 L. Ed. 2d 147. *See also: Zwicker v. Boll* (W. D. C. Wis. 1967), 270 Fed. Supp. 131, 135, affirmed per curiam (1968), 391 U. S. 353, 88 Sup. Ct. 1666, 20 L. Ed. 2d 642; *Soglin v. Kauffman* (W. D. C. Wis. 1968), 286 Fed. Supp. 851.

popular views will not qualify for conviction. The statute does not proscribe activities intertwined with protected freedoms unless carried out in a manner which is violent, abusive, indecent, profane, boisterous or unreasonably loud, or conduct similar thereto, *and* under circumstances in which such conduct tends to cause or provoke a disturbance. Prohibition of conduct which has this effect does not abridge constitutional liberty." [6]

This court's emphasis upon the relatedness of conduct and circumstances in the statute is no more than a recognition of the fact that what would constitute disorderly conduct in one set of circumstances, might not under some other. When a famed jurist observed, "The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic," [7] the comment related to the crowdedness of the theater as well as to the loudness of the shout. It is the combination of conduct and circumstances that is crucial in applying the statute to a particular situation.

The statute upheld, the issue on appeal becomes: Was the conduct of the defendant one of the types of conduct enumerated in the statute and, if so, was it carried out "under circumstances in which such conduct tends to cause or provoke a disturbance?" As this court has repeatedly stated, the test on appeal is "whether this court can conclude the trier of the facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true." [8] Here that issue is narrowed by the absence of conflict in the testimony as to the events leading up to the arrest of the defendant on a charge of disorderly conduct. Two witnesses testified, the arresting officer for the state, the defendant for the de-

---

[6] *State v. Zwicker, supra,* at page 509.

[7] *Schenck v. United States* (1919), 249 U. S. 47, 52, 39 Sup. Ct. 247, 63 L. Ed. 470.

[8] *Lock v. State* (1966), 31 Wis. 2d 110, 114, 142 N. W. 2d 183.

fense, and their testimony is not in conflict on material aspects of the case. However, the matter of the relatedness of the conduct to the circumstances requires an analysis of the exact situation presented to the trial court by the testimony and the photographs introduced into evidence.

*Place.* The place involved was a tavern on the south side of the city of Milwaukee, known as the Bastile.

*Event.* The evening of the arrest was a special occasion in that a number of orchestras or musical groups appeared in sequence to entertain the audience.

*Role.* The defendant appeared as a musician member of an orchestra or musical group that was part of the evening's entertainment.

*Attire.* The only article of clothing worn by the defendant was a jockstrap or athletic supporter. As the complaint states, he was "wearing only a supporter of his private parts and paint on his body." One picture is certainly worth several thousand words in describing the attire or lack of attire of the defendant, but it is enough here to state that the photographs establish he wore only a type of supporter or suspensory ordinarily worn under outer garments, usually under trunks in a gym. Holding as we do that the defendant's dressing as he did here constituted indecent and disorderly conduct within the statutory prohibition, did it tend to create or provoke a disturbance?

*Intent.* The defendant testified that he appeared as he did to "satirize" the audience. Asked by his attorney, "As a matter of fact, you were satirizing the so-called Hippies and protestors who were there on the night in question," the defendant answered, "That's right." As to the audience present, the police officer testified, ". . . these were supposedly Hippies that were there at the time." Defense counsel argues that this established that "You have an audience that's accustomed to the unusual." That may well be, but it is a not unreasonable inference

from the testimony that the defendant intended to seek and secure a definite reaction from the particular audience then present by dressing or undressing as he did.

*Reaction.* Defendant's inferable expectation of securing an audience reaction was not disappointed. While the record is brief, almost sketchy, the crowd's reaction to the attire or conduct of the defendant was not a delayed response. It is not disputed that as the police officer testified, "The spectators were all standing . . . all looking up on the stage. . . Some were standing on tables, yelling loudly. . . ." It might be a reasonable inference that the scene described was little more than a counterpart of a Munich brauhaus scene with high-energied young folks jumping up on beer-greasy tables to shout, "Ein prosit," and showing approval or disapproval of a performer. However, it is as a reasonable alternative inference that, in a crowded tavern, there existed a situation of mounting disorder, accumulating tension and predictable explosiveness. This inference the trial court drew finding that the defendant did in fact "cause and provoke a disturbance."

*Arrest.* Entitled to conclude that danger and disturbance existed, the single police officer present placed the defendant under arrest, charging him with disorderly conduct in light of the existing disturbance and reasonably predictable more serious disorder. That he did not also place under arrest members of the audience for disorderly reactions to defendant's conduct appears to have been a matter of logistics. Placing others under arrest might well have precipitated the explosion the officer had reason and right to seek to avoid. In any event he acted to remove from the scene the person whose conduct was in his judgment tending to provoke and in fact causing the disturbance. We deal only with the validity of that arrest and the subsequent conviction in court of the defendant.

Given this time and place, this conduct and these circumstances, we find that the evidence, and entirely

reasonable inferences to be drawn therefrom, do warrant and justify the trial court finding that the defendant was guilty of a violation of sec. 947.01, Stats., in that ". . . his actions were disorderly under the circumstances . . . [and] did cause and provoke a disturbance."

*By the Court.*—Judgment affirmed.