243 Wis.2d 173 (2001)
2001 WI 48
626 N.W.2d 712
IN the INTEREST OF A.S., a person Under the Age of 17:
STATE of Wisconsin, Petitioner-Appellant,
v.
A.S., Respondent-Respondent-Petitioner.
No. 99-2317.
Supreme Court of Wisconsin.
Oral argument October 3, 2000.
Decided May 16, 2001.
*181 For the respondent-respondent-petitioner there were briefs by Stephen P. Hurley, Marcus J. Berghahn and Hurley, Burish & Milliken, S.C., Madison, and oral argument by Marcus J. Berghahn.
For the petitioner-appellant the cause was argued by Jeffrey J. Kassel, assistant attorney general, with whom on the brief was James E. Doyle, attorney general.
¶ 1. WILLIAM A. BABLITCH, J. A.S.,
a juvenile, seeks review of two determinations by the court of appeals: (1) that the facts as pleaded in a delinquency petition alleging disorderly conduct were sufficient to constitute probable cause, and (2) that A.S.'s statements were not protected speech under the First Amendment. The disorderly conduct charge was based *182 on statements made by A.S. threatening violence toward a number of named individuals. A.S. argues that (1) speech alone cannot constitute disorderly conduct; (2) his speech is protected under the First Amendment; and (3) under the facts of this case, the elements of disorderly conduct are not met. We conclude that speech alone in certain contexts can constitute disorderly conduct; that in context A.S.'s speech is not protected by the First Amendment; and that the two elements of disorderly conduct are met here. Accordingly, we affirm.

I
¶ 2. On April 29, 1999, the State of Wisconsin (State) filed a delinquency petition against A.S., charging him with two counts of disorderly conduct. The circuit court dismissed the second count of the petition on June 4, 1999, after concluding that the petition lacked sufficient facts to support a finding of disorderly conduct on this count. The State does not contest this dismissal. Thus, our review is limited to the first count.
¶ 3. The petition alleges the following facts in support of the first count. On April 27, 1999, the DeForest Police Department received a report from a juvenile girl, A.H., about several threatening comments that A.S. made on April 26, 1999, at a local youth center. At that time, A.S. was 13 years old. The petition states in relevant part as follows:
A.H. reported that while [she, A.S. and another girl, M.L.] were playing a computer game, A.S. made several statements that he was going to kill everyone at the middle school, that this would occur over a 10 minute period of time, and while discussing the Colorado school shootings, A.S. stated that he was *183 going to "do something similar." A.H. further reported that A.S. stated that he was going to "make people suffer" and that he wished to kill everyone except for [A.H.], M.L., and some other buddies. A.H. further reported that A.S. stated that he wanted to "hang" DeForest Police Officer O'Neill as well as beat her at the knees. A.H. reported that A.S. stated that he would have Assistant Principal McHugh lie on the ground face down with his hands behind his back, that he would tell McHugh to count to 10, and prior to reaching 10, he would then shoot McHugh. A.H. reported that A.S. also stated that he wanted to shoot Mr. Clifford, the social studies teacher. A.H. further reported that A.S. also informed her that he would "rape" M.P., then let her go, and that A.S. appeared to be excited about this rape. (Names of juveniles replaced with initials.)
According to the petition, A.H. believed that A.S. would possibly commit the rape. A.H. noted that A.S. was not laughing when he made these statements and that he spoke in a "very matter-of-fact manner." The reference to school shootings in Colorado in the petition pertains to the shooting deaths of 15 individuals at Columbine High School in Littleton, Colorado on April 20, 1999. Two students who attended the high school caused these deaths. This incident received extensive national media attention.
¶ 4. The petition also states that the police interviewed two other juveniles, M.L. and J.G., about A.S.'s statements at the youth center. M.L. confirmed the allegations made by A.H. concerning A.S.'s statements at the youth center. M.L. also alleged that she told A.S. that his statements scared her and that she had to ask A.S. several times to stop making the statements before he stopped. J.G. reported that he heard A.S. *184 talking to two girls at the youth center about bringing guns to school with him.
¶ 5. Finally, the petition states that the police interviewed A.S. about his statements and that he admitted making them. The petition provides in relevant part as follows:
A.S. admitted that he stated, "I'm going to take over the school like in Colorado." A.S. admitted that he also made statements about shooting [the assistant principal] as he knelt and counted to 10. A.S. admitted that he also stated he would hang Officer O'Neill by her wrists, break her legs and shoot her. A.S. further admitted that he also made statements that he would like to rape M.P. (Names of juveniles replaced with initials.)
Based on these facts, the delinquency petition alleges that A.S. "engage[d] in abusive and otherwise disorderly conduct under circumstances in which such conduct tended to cause or provoke a disturbance; contrary to Section 947.01 of the Wisconsin Statutes...."
¶ 6. A.S. moved to dismiss the petition. The circuit court granted A.S.'s motion. The court concluded that A.S.'s statements needed "some additional basis" before they would constitute disorderly conduct. Although the court believed A.S.'s comments were "repulsive and shocking," it regarded the statements as "an extreme level of adolescent `trash talking,'" which produced no immediate disorder. The court noted that the failure of the listener to report A.S.'s conduct until the following day showed a lack of any immediate disorder and that such circumstances were "simply not of the type (charged, tense, volatile, disruptive, interfering, etc.) so as to allow probable cause to be found that these actions were `otherwise disorderly.'"
*185 ¶ 7. The court of appeals, in a one-judge unpublished decision, reversed the order of dismissal. The court first concluded that A.S.'s comments were not protected speech under the First Amendment. It opined that A.S. could be prosecuted because the government has an interest in protecting individuals from such threats of violence. The court then found that the allegations in the petition could support a conclusion that A.S.'s statements constituted disorderly conduct. As a result, based on the totality of the circumstances and the specific nature of A.S.'s statements, the court concluded that further proceedings on the disorderly conduct count were justified. A.S. petitioned this court for review.
¶ 8. The following three issues are presented for review: whether the disorderly conduct statute can be applied solely to speech; whether A.S.'s speech is protected under the First Amendment; and whether the elements of disorderly conduct are met in this case. We address each issue in turn.

II
[1]
¶ 9. The disorderly conduct statute, Wis. Stat. § 947.01 (1999-2000),[1] states as follows: "Whoever, in a public or private place, engages in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct under circumstances in which the conduct tends to cause or provoke a disturbance is guilty of a Class B misdemeanor." The statute contains two elements: (1) conduct of the type enumerated in the statute or similar thereto, and (2) the *186 conduct must be engaged in under circumstances which tended to cause or provoke a disturbance. State v. Zwicker, 41 Wis. 2d 497, 515, 164 N.W.2d 512 (1969).
¶ 10. The delinquency petition in this case reveals that the disorderly conduct charge against A.S. is based solely on his statements to other juveniles at the youth center. A.S. argues that it is impermissible for the State to proceed in this manner because the disorderly conduct statute cannot be applied solely to his speech. Instead, A.S. contends that, consistent with prior cases that have applied the statute, the statute can only be applied to speech when the speech is accompanied by conduct. A.S. argues that, by applying the statute solely to his speech, the State has effectively transformed the disorderly conduct statute into a content-based regulation, and as a result, an examination of the constitutionality of the statute must take place in light of this classification. In particular, A.S. asserts that the application of the statute in this manner requires us to ensure that the statute is narrowly drawn to proscribe only speech outside the protections of the First Amendment.
[2]
¶ 11. In essence, this challenge asks whether the disorderly conduct statute can be applied to regulate speech when that speech is unaccompanied by any physical conduct and is not unreasonably loud. We acknowledge that no Wisconsin court has ever examined whether the statute can be permissibly applied in this manner. This question, one of the nature and scope of the disorderly conduct statute, presents a question of law that we review de novo.
¶ 12. We examined the regulatory scope of the disorderly conduct statute in Zwicker, 41 Wis. 2d 497. In that case, we particularly examined whether the *187 statute was vague and overly broad and whether its application could be extended into the area of protected speech. Id. at 507-11. We concluded that the statute was sufficiently designed to overcome an attack for vagueness and that it was not so broad that it could be applied to conduct protected by the constitution. Id. at 507-09. We also noted that the statute could be applied to "activities intertwined with protected freedoms," but only if these activities were "carried out in a manner" consistent with the disorderly conduct statute. Id. at 509.
¶ 13. In the course of our examination, we specifically noted that the disorderly conduct statute is aimed at proscribing conduct in terms of the results that could be reasonably expected therefrom. Id. at 508. In other words, the statute is not aimed at circumscribing the content of speech directly. Cf. City of Madison v. Baumann, 162 Wis. 2d 660, 673, 678-81, 470 N.W.2d 296 (1991) (citing Zwicker, this court upheld the constitutionality of a city ordinance that was "substantially analogous" to the disorderly conduct statute, concluding that the ordinance's purpose was not to regulate speech). However, we noted in Zwicker that, even though such general regulatory statutes, like the disorderly conduct statute, are not aimed at directly controlling speech, their application may result in the incidental limitation on the content of speech. Zwicker, 41 Wis. 2d at 510 (quoting Konigsberg v. State Bar of California, 366 U.S. 36, 50 (1961)); cf. State v. Wickstrom, 118 Wis. 2d 339, 353-54, 348 N.W.2d 183 (Ct. App. 1984) (citing Zwicker, the court of appeals concluded that Wis. Stat. § 946.69(1), which prohibits falsely assuming to act as a public officer or employee, could also incidentally limit speech because *188 the statute penalized conduct, not speech). We noted that this limitation on speech is permissible because:
Constitutionally protected rights, such as freedom of speech and peaceable assembly, are not the be all and end all. They are not an absolute touchstone. The United States Constitution is not unmindful of other equally important interests such as public order. To recognize the rights of freedom of speech and peaceable assembly as absolutes would be to recognize the rule of force; the rights of other individuals and of the public would vanish.
Zwicker, 41 Wis. 2d at 509.
¶ 14. Indeed, in Feiner v. New York, 340 U.S. 315 (1951), the United States Supreme Court recognized that disorderly conduct statutes, which are not designed to specifically proscribe pure speech, may apply to incidentally limit speech in this manner.
The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts and words likely to produce violence in others. No one would have the hardihood to suggest that the principle of freedom of speech sanctions incitement to riot or that religious liberty connotes the privilege to exhort others to physical attack upon those belonging to another sect. When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order appears, the power of the State to prevent or punish is obvious.
Feiner, 340 U.S. at 320 (quoting Cantwell v. State of Connecticut, 310 U.S. 296, 308 (1940)).
*189 [3]
¶ 15. In Zwicker, we discussed certain types of speech, which by their very nature cause a breach of the peace.
There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, and libelous, and the insulting or "fighting" wordsthose which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.
Zwicker, 41 Wis. 2d at 510 (quoting Chaplinsky v. New Hampshire, 315 U.S. 568, 571 (1942)). Thus, even though, as in this case, the disorderly conduct statute is being applied to speech, this application is permissible because the application is not directed at the content of the speech itself. Instead, the prosecution is directed at controlling the harmful effects of the speech.
[4, 5]
¶ 16. Because the disorderly conduct statute only proscribes speech that is not constitutionally protected, it does not result in the statute becoming overly broad. See In the Interest of Douglas D., 2001 WI 47, ¶¶ 21, 24, 243 Wis. 2d 204, 626 N.W.2d 725. As Douglas D. concludes, the disorderly conduct statute does not infringe on speech that is protected under the First Amendment because the statute sanctions only categories of speech that have been traditionally regarded as beyond the *190 protection of the First Amendment. Id. Thus, A.S.'s speech can be prosecuted only if his speech is one of the limited categories of speech that fall outside the protections of the First Amendment.
[6]
¶ 17. We conclude that application of the disorderly conduct statute to speech alone is permissible under appropriate circumstances. The right of free speech is not absolute. When speech is not an essential part of any exposition of ideas, when it is utterly devoid of social value, and when it can cause or provoke a disturbance, the disorderly conduct statute can be applicable.

III
¶ 18. A.S. also argues that, even if the disorderly conduct statute can be applied solely to his speech, application of the statute in this case is unconstitutional because his statements are protected under the First Amendment of the United States Constitution and Article I, Section 3 of the Wisconsin Constitution.[2] A.S. contends that his speech is protected because it is mere hyperbole and that it is simply, as the trial court *191 stated, immature "trash talking." A.S. argues that, in order for his speech to fall outside the protections of the First Amendment, it must have either incited immediate lawless action or caused an immediate physical reaction from a listener. A.S. contends that neither occurred in this instance. As a result, the petition must be dismissed because it is based on speech that is protected under the First Amendment.
¶ 19. This challenge presents a question of law that we determine de novo. State v. Weidner, 2000 WI 52, ¶¶ 6-7, 235 Wis. 2d 306, 611 N.W.2d 684; see also State v. Pallone, 2000 WI 77, ¶¶ 26-27, 236 Wis. 2d 162, 613 N.W.2d 568 (concluding that application of constitutional principles to a set of facts is a question of constitutional fact, which is a question of law).
¶ 20. A.S. relies primarily on Brandenburg v. Ohio, 395 U.S. 444 (1969), to support his argument that his speech is protected. Brandenburg involved the conviction of a Ku Klux Klan leader for violating Ohio's criminal syndicalism statute. Id. at 444-45. This statute prohibited the advocacy of violent political reform and the assembly in a group to teach or advocate such doctrine. Id. The speech at issue in Brandenburg was delivered during a rally and advocated, in part, that "if our President, our Congress, our Supreme Court, continues to suppress the white, Caucasian race, it's possible that there might have to be some revengeance taken." Id. at 446. The Court reversed the leader's conviction on this statute, concluding that the mere advocacy of violence was protected by the First Amendment as long as the advocacy did not incite people to imminent action. Id. at 447. Relying on this holding, A.S. contends that his statements are protected speech because they constituted mere advocacy and did not incite any immediate lawless action.
*192 ¶ 21. The State argues, however, that A.S.'s statements more closely resembled "true threats," which the United States Supreme Court first recognized as a class of unprotected speech in Watts v. United States, 394 U.S. 705 (1969). Watts involved the conviction of an antiwar demonstrator under a federal statute prohibiting threats against the President. Id. at 706. Watts told a crowd of demonstrators that" `[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J.'" Id. Based on this statement, he was convicted of "`knowingly and willfully... [making a] threat to take the life of or to inflict bodily harm upon the President of the United States.'" Id. at 705. In reversing Watts' conviction, the Supreme Court concluded that the statute required the Government to initially prove a "true threat." Id. at 708. The Court concluded that a "true threat" was not proven; instead the court regarded the statement made by Watts as mere "political hyperbole." Id. The Court reasoned that "[t]aken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners,[3] we do not see how it could be interpreted otherwise." Id. The Watts Court did not provide any other guidelines for determining "true threats."
[7-11]
¶ 22. We conclude that the factual allegations in the petition more closely resemble that of a threat under Watts than of an incitement to action under Brandenburg. Thus, we examine A.S.'s statements under a "true threat" analysis. In our examination, we apply a test for a "true threat" that was adopted in our *193 decision in State v. Perkins, 2001 WI 46, 243 Wis. 2d 141, 626 N.W.2d 712. This test employs an objective reasonable person standard and defines a "true threat" as follows:
A true threat is a statement that a speaker would reasonably foresee that a listener would reasonably interpret as a serious expression of a purpose to inflict harm, as distinguished from hyperbole, jest, innocuous talk, expressions of political views or other similarly protected speech. It is not necessary that the speaker have the ability to carry out the threat. In determining whether a statement is a true threat, the totality of the circumstances must be considered.
Id. at ¶ 29. Consideration must be given to "the full context of the statement, including all relevant factors that might affect how the statement could reasonably be interpreted." Id. at ¶ 31. To this end, various factors should be considered, including:
how the recipient and other listeners reacted to the alleged threat, whether the threat was conditional, whether it was communicated directly to its victim, whether the maker of the threat had made similar statements to the victim on other occasions, and whether the victim had reason to believe that the maker of the threat had a propensity to engage in violence.
Id. (citation omitted).
[12]
¶ 23. In applying the test to A.S.'s statement, we conclude that his statements, as alleged in the petition, did constitute true threats. Under the totality of the circumstances, a reasonable speaker in the position of A.S. would foresee that reasonable listeners would *194 interpret his statements as serious expressions of an intent to intimidate or inflict bodily harm. M.L. told him that his statements were scaring her. She asked him several times to stop making the statements. The recent events at Columbine High School, which A.S. made reference to during the course of his statements, heightened the anxiety of the listeners. A reasonable person in the position of A.S. had to know that his listeners were concerned about what had happened at Columbine and about what could happen if A.S. was determined to carry out his threats.
[13]
¶ 24. The alleged facts in the petition also indicate that he made the statements in a very matter of fact manner and was not laughing at the time. There was nothing in the statements, nor was there anything in the context, that would indicate that A.S. was simply engaging in hyperbole, jest, or political dissent. These were true threats. A.S. had no more right to make these statements than, in the words of Holmes, does a man have the right to cry "fire" in a crowded theater.

IV
¶ 25. Our conclusion that, based on the facts in the petition, A.S.'s statements constituted a "true threat" is alone not determinative of whether the pleading contains probable cause for disorderly conduct. Indeed, the State is also required to provide sufficient facts in the petition to support the charge of disorderly conduct. See State v. Becker, 51 Wis. 2d 659, 664-66, 188 N.W.2d 449 (1971). A.S. challenges the petition in this respect, arguing that it must be dismissed because it fails to allege sufficient facts to support a finding of disorderly conduct.
*195 [14-16]
¶ 26. The sufficiency of a criminal complaint is a question of law, which we review de novo. State v. Smaxwell, 2000 WI App 112, ¶ 5, 235 Wis. 2d 230, 612 N.W.2d 756. The same principles that apply when reviewing the sufficiency of a criminal complaint apply to a petition in juvenile court proceedings. In Interest of L.A.T., 167 Wis. 2d 276, 283, 481 N.W.2d 493 (Ct. App. 1992). In turn, a petition "must charge a crime under the law, must describe the conduct alleged to constitute the offense, and must contain sufficient facts to persuade a neutral and detached magistrate that the charged crime has probably been committed by the accused." State v. O'Connor, 77 Wis. 2d 261, 275-76, 252 N.W.2d 671 (1977). The petition should state what charge is alleged, who is charged, when and where the offense is alleged to have taken place, why this juvenile is being charged, and who is making the allegations. Becker, 51 Wis. 2d at 663; State ex rel. Evanow v. Seraphim, 40 Wis. 2d 223, 230, 161 N.W.2d 369 (1968).
[17, 18]
¶ 27. It is not necessary that the petition establish the juvenile's guilt beyond a reasonable doubt. State v. Hoffman, 106 Wis. 2d 185, 200, 316 N.W.2d 143 (Ct. App. 1982). The petition's function is informative, not adjudicative. State v. Olson, 75 Wis. 2d 575, 583, 250 N.W.2d 12 (1977). The petition will be sufficient if the facts, by themselves or together with the reasonable inferences to which they give rise, lead a fairminded magistrate to reasonably conclude that the facts alleged justify further criminal proceedings. Becker, 51 Wis. 2d at 662-63.
¶ 28. We examine the facts alleged in the petition in light of the elements of the charged offense. Disorderly conduct has two elements. The first requires that *196 the conduct must be violent, abusive, profane, boisterous, unreasonably loud, or otherwise disorderly. To satisfy this element, the petition alleges that A.S.'s statements were both abusive and otherwise disorderly.
¶ 29. We provided a limited definition of "abusive" language in Lane v. Collins, 29 Wis. 2d 66,70-72, 138 N.W.2d 264 (1965). In Lane, the defendant was arrested for violating a city disorderly conduct ordinance after he called a police officer a "son-of-a-bitch." Id. at 70-71. We concluded that the city ordinance was similar in import to the first element of the state disorderly conduct statute and noted:
The underlying reason for disorderly conduct statutes and ordinances proscribing abusive language is that such language tends to provoke retaliatory conduct on the part of the person to whom it is addressed that amounts to breach of the peace. Calling another person a "son-of-a-bitch" under charged circumstances might well constitute abusive language which is likely to have that result.
Id. at 71-72 (footnote omitted). Thus, following this language, A.S.'s statements will constitute "abusive" statements if under the circumstances they tended to provoke retaliatory conduct on the part of the person or persons to whom the statements were addressed.
[19]
¶ 30. The petition alleges that A.S. told two girls that he intended to kill everyone at the middle school, except the girls and some other friends, and that he would make people suffer in the process. A.S. then provided graphic detail on the manner he would use to kill or seriously harm specific individuals, including a teacher, an assistant principal, a police officer, and a *197 classmate. The petition states that A.S.'s statements were made during a discussion of recent school shootings in Colorado. This context could provide charged circumstances, and under such circumstances, such language may tend to provoke retaliatory conduct from the persons hearing the statements. As a result, the petition contains sufficient facts to establish probable cause that the language was abusive.
¶ 31. We also conclude that the petition contains sufficient facts to support a finding of probable cause that A.S.'s conduct was "otherwise disorderly." We have examined the "otherwise disorderly" provision in other cases, such as City of Oak Creek v. King, 148 Wis. 2d 532, 436 N.W.2d 285 (1989), and State v. Werstein, 60 Wis. 2d 668, 211 N.W.2d 437 (1973); however we have never examined this provision in a context where the conduct consists solely of pure speech. Nevertheless, Werstein and King provide guidance on how this section should be interpreted.
[20]
¶ 32. In particular, in Werstein, we recognized that our analysis of whether certain conduct is "otherwise disorderly" must include an examination of the circumstances surrounding the conduct. Werstein, 60 Wis. 2d at 672-73. We concluded that such an examination is necessary because certain circumstances may require criminal culpability, even in instances where the alleged disorderly conduct may be protected under the First Amendment. Id. at 673.
[21, 22]
¶ 33. In King, we provided additional guidance. Specifically, we noted that "`[w]hen the statute, after the specific enumerations, in a `catchall' clause proscribes `otherwise disorderly conduct' which tends to `provoke a disturbance,' this must mean conduct of a *198 type not previously enumerated but similar thereto in having a tendency to disrupt good order and to provoke a disturbance.'" King, 148 Wis. 2d at 541 (quoting State v. Givens, 28 Wis. 2d 109, 115, 135 N.W.2d 780 (1965)). This interpretation is based on the rule of ejusdem generis.[4]Givens, 28 Wis. 2d at 115. In light of this analysis, we noted the conduct must be of the type that tends to "disrupt good order." King, 148 Wis. 2d at 540. Thus, following Werstein and King, conduct will fall under the "otherwise disorderly" provision if under the circumstances the conduct is of the type that tends to disrupt good order. This test requires an objective analysis of both the conduct and the circumstances.
[23]
¶ 34. According to the petition, A.S. made several violent threats about specific, identifiable individuals. A.S. expressed these threats in a serious manner and provided specific accounts on the violent manner in which he would carry out the threats. In addition, A.S. made these threats during a discussion of recent murders that occurred at Columbine High School in Colorado. We conclude that under these circumstances such conduct supports a finding of probable cause of "otherwise disorderly" conduct. Such violent threats are of the type that tend to disrupt good order under the circumstances because they could cause the listeners to be seriously concerned about the safety of those threatened. We conclude, therefore, that the petition is sufficient on the first element.
*199 [24]
¶ 35. We acknowledge, as the circuit court did, that some facts and inferences from the petition may weigh against a finding that the conduct was otherwise disorderly. For example, the age and relative immaturity of A.S. is one possible countervailing factor. Another is that A.S.'s alleged threats were not directed toward any person who heard the threats. However, in reviewing a motion to dismiss, we do not weigh the facts in the petition and make a determination as to the legitimacy of the claim. We only determine whether the petition establishes probable cause.
[25]
¶ 36. Having concluded that the petition contains sufficient facts for probable cause on the first element, we now examine the second element. This element requires us to determine whether under the circumstances A.S.'s statements tended to cause or provoke a disturbance. In making this determination, we do not examine whether a particular person was disturbed or annoyed. Givens, 28 Wis. 2d at 116. Further, it is not necessary that an actual disturbance result from the conduct of a defendant. King, 148 Wis. 2d at 545. Instead, the court only examines whether the conduct was of the type that tends to cause or provoke a disturbance under the circumstances as they then existed. Id.
[26]
¶ 37. We conclude that the petition was sufficient to establish probable cause on the second element. As mentioned in the analysis of the first element, the petition alleges that A.S. made violent and detailed threats about specific individuals during a discussion about the murders at Columbine High School. Under these circumstances, such violent threats to kill and seriously *200 harm others could only serve to frighten and cause serious concern to the listeners.
¶ 38. In addition to considering the potential effects of a defendant's conduct in disorderly conduct cases, our prior cases also indicate that the actual effects of a defendant's conduct are probative. For example, in State v. Maker, 48 Wis. 2d 612, 180 N.W.2d 707 (1970), we reviewed a defendant's conviction of disorderly conduct and specifically considered the reaction of those observing the defendant's conduct. In Maker, the defendant performed as part of a musical group in a tavern in Milwaukee, and while on stage, he wore only a supporter and body paint. Id. at 613, 617. The testimony at the defendant's trial indicated that the crowd's reaction to the defendant was not delayed; the crowd stood on tables to see the defendant and yelled loudly in reaction to the defendant's performance. Id. at 618. In light of this reaction, we noted that "it is as a reasonable alternative inference that, in a crowded tavern, there existed a situation of mounting disorder, accumulating tension and predictable explosiveness. This inference the trial court drew finding that the defendant did in fact `cause and provoke a disturbance.'" Id. We concluded that when viewing the conduct in light of the circumstances, especially the time and place of the conduct, the defendant's actions were disorderly and did cause and provoke a disturbance. Id. at 618-19.
[27]
¶ 39. In A.S.'s case, the reaction of the listeners and the other actual effects of A.S.'s conduct are also probative. In particular, the petition indicates that M.L. was allegedly frightened by A.S.'s statements and that she asked him several times to stop making the threats. The petition also indicates that A.H. was concerned *201 enough to report A.S.'s conduct to the police the next day. The police then spent considerable time conducting interviews concerning A.S.'s threats. These actual effects of A.S.'s conduct support our finding that his conduct tended to cause or provoke a disturbance.
¶ 40. A.S. asserts that our prior case law interpreting this statute has required an immediate physical and visible reaction by those subject to the conduct, and because the petition in his case lacked any information on an immediate reaction from the listeners, the petition is insufficient. We disagree. None of the cases upon which A.S. relies state that an immediate, physical reaction is necessary for disorderly conduct to occur. See King, 148 Wis. 2d 532; Werstein, 60 Wis. 2d 668; State v. Elson, 60 Wis. 2d 54, 208 N.W.2d 363 (1973); Maker, 48 Wis. 2d 612; Lane, 29 Wis. 2d 66; Givens, 28 Wis. 2d 109. Indeed, all of the cases recognize that the emphasis of the disorderly conduct statute is not on the reaction of the listener or observer, but instead on the conduct itself in light of the circumstances. As a result, this argument is without merit.
[28, 29]
¶ 41. Finally, we acknowledge that only certain types of conduct fall under the statute, specifically:
The statute does not imply that all conduct which tends to annoy another is disorderly conduct. Only such conduct as unreasonably offends the sense of decency or propriety of the community is included. The statute does not punish a person for conduct which might possibly offend some hypercritical individual. The design of the disorderly conduct statute is to proscribe substantial intrusions which offend the normal sensibilities of average persons or *202 which constitute significantly abusive or disturbing demeanor in the eyes of reasonable persons.
Zwicker, 41 Wis. 2d at 508. We make our determination in light of this language and conclude that the petition set forth sufficient facts to establish probable cause that A.S.'s conduct constituted disorderly conduct.
By the Court.The decision of the court of appeals is affirmed, and the cause is remanded to the circuit court for further proceedings.
¶ 42. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (concurring).
In my concurrence to In the Interest of Douglas D.: State v. Douglas D., 2001 WI 47, 243 Wis. 2d 204, 626 N.W.2d 725, I explained why the disorderly conduct statute (Wis. Stat. § 947.01) should not apply to the pure content of speech, unaccompanied by any disorderly conduct, and why specific intent is required if the statute is to apply to a true threat. I am bound, but not bowed, by the majority opinion in Douglas D., now precedent in this state.
¶ 43. For the reasons set forth, I write separately.
¶ 44. WILLIAM A. BABLITCH, J. (concurring).
A majority of this court adopts the definition of "true threat" found in State v. Perkins, 2001 WI 46. I would adopt a more stringent test for a true threat when the crime charged, as here, does not require intent. See In the Interest of Douglas D., 2001 WI 47 at ¶¶ 61-64 (Bablitch, J., concurring). I conclude, however, that, under either test, the statements made by A.S. would constitute a true threat. For this reason, I concur in this case. I refer to my concurrence in Douglas D., *203 which explains my reasons for adopting a different test.
NOTES
[1] All subsequent references to the Wisconsin Statutes are to the 1999-2000 version unless otherwise indicated.
[2] "The First Amendment of the United States Constitution states that `Congress shall make no law...abridging the freedom of speech....' It applies to the states via the Fourteenth Amendment." State v. Janssen, 219 Wis. 2d 362, 368 n.4, 580 N.W.2d 260 (1998). Article I, Section 3 of the Wisconsin Constitution states that "[e]very person may freely speak...and no laws shall be passed to restrain or abridge the liberty of speech." County of Kenosha v. C & S Mgmt., Inc., 223 Wis. 2d 373, 387 n.4, 588 N.W.2d 236 (1999). Despite differences in language, Article I, Section 3 of the Wisconsin Constitution guarantees the same freedom of speech rights as the First Amendment of the United States Constitution. Id. at 388.
[3] At the circuit court level, it was noted that the comments made by Watts were greeted with laughter and applause. Watts v. United States, 402 F.2d 676, 682 (D.C. Cir. 1968).
[4] Ejusdem generis is a "canon of construction that when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed." BLACK'S LAW DICTIONARY 535 (7th ed. 1999).